**FILED**
**May 26, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0201** (Monongalia County No. 20-F-134)

**Kyle Brandon Rocha,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Kyle Brandon Rocha, by counsel William L. Pennington, appeals the Circuit Court of Monongalia County's February 16, 2021, order sentencing him to consecutive terms of incarceration of not less than two years nor more than ten years for his malicious assault conviction and not less than three nor more than fifteen years for his attempted first-degree murder conviction. Respondent State of West Virginia, by counsel Patrick Morrisey and Andrea Nease Proper, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 18, 2020, officers of the Morgantown Police Department were dispatched following a report of a sexual assault. According to the police, the victim reported that petitioner sexually assaulted her by forcing her to perform oral sex on him, and he then "turned [her] around and forced his penis . . . [into] her anus." Also, "in addition to sexually assaulting her, [petitioner] had physically assaulted her, striking her in the face with a glass jar containing a candle" and choking her. Petitioner was subsequently indicted on two counts of first-degree sexual assault, one count of malicious assault, and one count of attempted first-degree murder.

In October of 2020, petitioner and the State entered into a plea agreement. Petitioner agreed to plead guilty to malicious assault and attempted first-degree murder in exchange for the dismissal of the first-degree sexual assault charges. The State further agreed to recommend consecutive terms of incarceration of two to ten years for the malicious assault conviction and three to fifteen years for the attempted first-degree murder conviction, but the State set forth that it would "request that the [c]ourt make a finding pursuant to W. Va. Code § 15-12-2(c) that the above crimes were

1

sexually motivated."[1] Petitioner was permitted to "make a sentence recommendation." The court accepted petitioner's guilty pleas and adjudged him guilty of malicious assault and attempted first-degree murder.

Petitioner moved for a forensic psychological evaluation/sex offender evaluation and treatment plan to be conducted by Dr. William Fremouw "to support [his] argument against the State's effort to seek a finding that his crimes were sexually[]motivated." The court granted petitioner's motion.

In the meantime, the State obtained information from West Virginia University ("WVU") concerning reported physical and sexual abuse petitioner inflicted on his then-girlfriend (not the victim here) while the two were enrolled at WVU. His then-girlfriend reported that petitioner "would strike her multiple times with an open hand in the face, head, back and breasts areas and punch[ed] her in the area of her kidney." She reported that his physical abuse of her occurred on multiple occasions in 2013, 2014, and 2015. His then-girlfriend also reported that, in 2014 and 2015, "in addition to striking her, [petitioner] also strangled her until she was unable to breathe." On one occasion, he strangled her until she lost consciousness. Within that same general timeframe, she reported instances of forcible oral and anal sex as well as physical abuse that "only stopped when [petitioner] forced her to permit him to sodomize her." The WVU records include the further observation from an interviewer of petitioner's then-girlfriend that "[m]any of the physical acts would only cease when she surrendered to forced sexual acts including sodomy and oral sex." Following a Student Conduct hearing, "the Hearing Panel determined that [petitioner was] responsible for the Student Code violations alleged in the June 30, 2016[,] Charge Notice [and outlined above] by a preponderance of the evidence," and he was expelled from WVU.

Dr. Fremouw's report indicated that petitioner provided background information, including his education history. Petitioner told Dr. Fremouw that he "dropped out" of school in 2015 "and has not resumed his education." Dr. Fremouw diagnosed petitioner with methamphetamine dependence, heroin dependence, and adjustment disorder with mild depression due to incarceration. Tests administered by Dr. Fremouw found that petitioner did not "endorse items that justify sexual offending or cognitive distortions" and that he had an "8% five[-]year recidivism rate."

Regarding the incident giving rise to the instant charges, petitioner admitted to Dr. Fremouw that he and the victim "got into an argument about how we were going to get drugs" and that "[i]t turned violent," but he denied "the oral and anal sex stuff."

Dr. Fremouw's analysis further included a review of the police records completed during the investigation of the underlying charges. Petitioner's victim, in response to a question about whether petitioner sexually assaulted her, stated that "that's the only part of my body that [petitioner] doesn't hurt because he wants to have children. Therefore, he's easy with me." Dr. Fremouw noted "inconsistent presentation by the victim [four] hours [after the initial police report]

---

[1] West Virginia Code § 15-12-2(c) requires "[a]ny person who has been convicted of a criminal offense" to register as a sex offender "where the sentencing judge made a written finding that the offense was sexually motivated."

regarding whether a sexual assault occurred," but he found the victim's report that petitioner choked her to be "consistent based on multiple victim statements and medical evidence." Dr. Fremouw further observed that "[t]he victim did not describe the choking that day as part of consensual sexual activity." Rather, the victim reported it to have occurred as "an aspect of physical assault which included a blow to the head." The doctor opined that "the extreme violence was motivated by anger and malice and not 'sexually motivated.'" In summary, Dr. Fremouw stated that "[g]iven the inconsistency of [the victim's] account over less than four hours, I cannot conclude that his actions were sexually motivated beyond preponderance of the evidence."

The court held a sentencing hearing on January 27, 2021, and February 10, 2021. Petitioner argued that the incident leading to his convictions was "a drug-fueled incident of rage," "not something that was sexually motivated." Petitioner argued that he "inflicted physical injuries on his victim because he was mad," and he stated that "we're not even sure whether there was sexual contact during this incident on the evening of February 18th." Petitioner suggested that "probation supervision for up to five years" along with drug rehabilitation was appropriate.

Dr. Fremouw testified that he did not review the videotape footage of the victim taken from the responding officer's body camera because "the video did not open," but he "could hear part of the audio." Dr. Fremouw also testified that he did not review the documents from WVU because they "would not [have] changed my opinion about that night. It would be more history." The State asked, "If, in fact, the allegations that led to him being actually expelled from the university were violence, strangulation, and sodomy, would that have made a difference in your analysis? Because, really, that's the allegation in this case." The doctor answered, "Well, allegations are not a conviction, they're not confessions. So that would be something to consider. But that alone would not change the fact I couldn't conclude these actions were sexual. The [sexual assault nurse examiner] interview, and what she went through, everything was rated as unsure." Dr. Fremouw agreed with the State, though, that "there's a lot of information in this case that [he] did not have, nor request from [the State], nor w[as] provided by [petitioner's counsel] prior to [the doctor's] conclusions in this evaluation." Dr. Fremouw also testified that the first time he had been asked to offer an opinion on sexual motivation was for this case and that he was previously unaware that someone could be required to register as a sex offender without having been convicted of a sex crime. He said it "would have helped" to know that.

Dr. Fremouw further testified that he "can't tell" whether the crimes of which petitioner was convicted were sexually motivated. He explained,

> The witness was inconsistent over a period of four hours. . . . The defendant made no statements. He didn't provide much detail for that night. So I had very little to go on. And given very little, I could not conclude much. So I stand by (inaudible) what I had. There's not enough to say his actions were sexually motivated. . . . I did not have any direct evidence except that she had been choked in the past by him, and was choked that night. But that doesn't mean it was for sexual gratification. It could've been through malice in an attempt to murder her, not to please her. It's very ambiguous.

Dr. Fremouw acknowledged that it was "a possibility" that petitioner's crimes were sexually motivated, but he "d[id] not have enough evidence to conclude that was the motivation." He found

it more likely that petitioner "was trying to kill her" because "[t]hat's what she said and was witnessed by the neighbors."

Detective Ben Forsythe, of the Morgantown Police Department, testified that there were consistencies between the events giving rise to the petitioner's expulsion from WVU and the allegations here: "The consistency between the two reports was that there was—[petitioner] was accused of violence against a sexual partner that he had a relationship with, and that violence was physical violence and sexual violence." The type of sexual violence—"sodomy and forcible oral sex"—were the same, and the detective agreed that "it was wrapped up in the domestic violence as well."

The detective testified that, with respect to the events underlying the instant charges, officers were called to the scene by a third party "who came in contact with the victim as she was running down a city street yelling for help."[2] The victim was wearing nothing but underwear, though it was February and cold outside. Detective Forsythe also recounted that one of the responding officers reported that petitioner "told [the victim] to [']get on your knees, whore,['] and forced [the victim] to perform oral sex on him." The victim reported that petitioner "then turned her around and put his penis somewhere other than where it normally goes."

Petitioner's mother testified to text messages she received from the victim immediately following the events giving rise to petitioner's underlying charges in which the victim denied that petitioner sexually assaulted her.

In sentencing petitioner, the court noted that it had

> reviewed the file in this case starting with the indictment up to and including the plea agreement and the plea order. And I have reviewed the presentence report that was prepared for the sentencing, as well as the adult sex offender and risk evaluation from [Dr.] Fremouw. And I've listened intently to the testimony during this sentencing hearing covering two days. And I have considered your statements, [petitioner], as well as those of your counsel, as well as the comments of the prosecuting attorney.

The court then imposed consecutive terms of incarceration of not less than three nor more than fifteen years for petitioner's attempted first-degree murder conviction and not less than two nor more than ten years for petitioner's malicious assault conviction. It further found that these crimes were sexually motivated. The court entered its sentencing order on February 16, 2021, memorializing petitioner's sentence and its requirement that petitioner register as a sex offender due to its finding, "based upon the evidence presented[,] that the crimes were sexually motivated." Petitioner now appeals.

Petitioner raises two assignments of error on appeal. In his first, he argues that the court erred in determining that his crimes were sexually motivated beyond a reasonable doubt. Petitioner points to Dr. Fremouw's opinion that petitioner's violent conduct was "motivated by anger and

---

[2] It does not appear that the detective was a responding officer. He testified to the facts as they were recorded by the responding officers.

4

malice and not 'sexually motivated,'" and he argues that the evidence from WVU of "prior similar conduct" does not support a finding that the crimes of which he was convicted here—four years after his expulsion for those prior events—were sexually motivated. He argues, too, that the only other evidence adduced by the State to support a finding of sexual motivation was the responding officer's body camera footage, but that evidence "is not readily apparent upon the record."[3] Thus, he challenges the sufficiency of the evidence to support a finding of sexual motivation.

In petitioner's second assignment of error, he argues that the court's determination of sexual motivation was not supported by any oral or written findings of fact. Although the court recounted what it reviewed and listened to, the court did not list the "facts, factors, circumstances, considerations or other reasons for its determination." Petitioner submits that any time a court is sitting without a jury and is required to make a finding with a burden of proof of beyond a reasonable doubt, the court "must make findings of fact and conclusions of law upon the record in support of its determination."

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *State v. Hinchman*, 214 W. Va. 624, 591 S.E.2d 182 (2003) (citation omitted). Further, in challenging the sufficiency of the evidence to support the finding of sexual motivation, we note that petitioner "takes on a heavy burden." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

> An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.*

West Virginia Code § 15-12-2(c) requires "[a]ny person who has been convicted of a criminal offense" to register as a sex offender "where the sentencing judge made a written finding that the offense was sexually motivated." Under this statute, "sexually motivated" "means that one of the purposes for which a person committed the crime was for any person's sexual gratification," *id.* § 15-12-2(j), and "[t]he evidentiary standard for a finding of 'sexual motivation' pursuant to

---

[3] While unclear, it appears that petitioner is referencing the fact that the body camera footage could not be viewed at the sentencing hearing due to technical difficulties. The State proffered that the footage would have shown that the victim reported both sexual and physical assaults.

*W.Va.Code*, 15-12-2(c) [2001] is proof beyond a reasonable doubt." Syl. Pt. 2, in part, *State v. Whalen*, 214 W. Va. 299, 588 S.E.2d 677 (2003).

In view of the heavy burden petitioner faces, we find no error in the court's finding that the crimes of which he was convicted were sexually motivated. The victim reported that petitioner struck her in the face with a glass candle and choked her. She also reported being physically forced by petitioner to perform oral sex on him, and he then turned her around to forcibly penetrate her anally. His girlfriend at WVU reported similar assaults, and she stated that "the physical abuse only stopped when he forced her to permit him to sodomize her." Indeed, there are several references to the fact that petitioner's physical assaults stopped only once he was able to obtain the sex he desired. Stated another way, one of the purposes for which he committed his physical assaults at WVU was to ultimately obtain sexual gratification—facts petitioner apparently felt were damning enough that he withheld them from the evaluator he retained to offer an opinion as to whether the crimes here were sexually motivated. While we are mindful of our pronouncement in *Whalen* that "[t]he statutory language defining 'sexual motivation' at *W.Va.Code*, 15-12-2(j) [2001] must be read and applied strictly and narrowly to assure that an offense's gravity, dangerousness, and sexually illicit nature is comparable to that of the specific offenses that are identified in *W.Va.Code*, 15-12-2(b) [2001]," *Whalen*, 214 W. Va. at 300, 588 S.E.2d at 678, Syl. Pt. 3, the definition has not been stretched to the "absurd result" cautioned against in *Whalen*, i.e., "stealing a car in order to drive a friend to have consensual sexual relations with their spouse." *Id.* at 303, 588 S.E.2d at 681. Rather, this situation is more akin to that presented in *State v. Kennedy*, where the defendant's conduct in carrying an intoxicated minor (a battery) to a back bedroom where she was later, with the defendant's encouragement, sexually assaulted by another was determined to be sexually motivated. 243 W. Va. 58, 67, 842 S.E.2d 262, 271 (2020). The record here, in similar fashion, shows that petitioner's endgame in his physical assaults is obtaining acquiescence to the sex—and sexual gratification—he demands, so it cannot be said that the record contains no evidence from which a finding of sexual motivation could be made.

Finally, we find no error in the substance or form of the court's ruling. In *State v. Davis*, No. 12-0704, 2013 WL 2157733 (W. Va. May 17, 2013)(memorandum decision), we entertained and rejected a similar challenge. The defendant claimed that the court "did not make the proper findings when requiring petitioner to register as a sex offender for life," which we disagreed was the case as the court "found that the offenses for which petitioner was convicted were sexually motivated and that she must register as a sex offender for life. The trial court then made the requisite written finding that petitioner's crimes were sexually motivated." *Id.* at *2; *see also* W. Va. Code § 15-12-2(c) (requiring that a "written finding that the offense was sexually motivated" be made). The court here "found based upon the evidence presented that the crimes were sexually motivated and therefore require the defendant to register as a sex offender pursuant to W.Va. Code §15-12-2(c)." We have not required more of a court, and we decline to do so here.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2022

6

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**DISSENTING:**

Chief Justice John A. Hutchison

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.

**NOT PARTICIPATING:**

Justice C. Haley Bunn